IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| ROBERT WELDZIUS,<br><br>　　Movant/Plaintiff,<br><br>v.<br><br>CLIFFORD BOYNES, *et al*.,<br><br>　　Respondent/Defendant. | D.C. Virgin Islands, Division of St. Croix<br>Docket No.: 1:21-cv-00253-WAL-EAH<br><br>M.D. Tenn. Docket No.:<br><br>Judge |

**NON-PARTY ROBERT WELDZIUS'S**
**MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA**

Comes now, Robert Weldzius, a non-party to the case *Clifford Boynes, et al. v. Limetree Bay Ventures, LLC, et al*., pending in the District Court of the U.S. Virgin Islands, Division of St. Croix, at consolidated docket number 1:21-cv-00253-WAL-EAH ("Underlying Case") and submits this Memorandum in Support of his Motion to Quash Subpoena and further states as follows:

I. **Introduction**

In early 2021, a petroleum refining facility ("Facility") allegedly experienced several emissions-related incidents on the Western portion of the island of St. Croix. In the aftermath, the U.S. Environmental Protection Agency and Department of Justice initiated investigations into the incidents. Additionally, some residents of St. Croix, alleging that they were injured as a result of the incidents, have brought a class-action suit against the owners, operators, and investors of the Facility (the defendants in that lawsuit are referred to collectively herein as "Limetree"). In

1

addition to being the subject of the Plaintiffs' civil suit, Limetree and its employees may also be the subject of imminent criminal actions. Plaintiffs allege that Mr. Weldzius is one such former employee, specifically the Refinery General Manager for a relevant portion of the Facility's operations. Plaintiffs have now subpoenaed Mr. Weldzius to require him to provide testimony by oral examination, threatening his privilege against self-incrimination under the Fifth Amendment to the U.S. Constitution. Mr. Weldzius brings this Motion to Quash the subpoena to prevent him from having to risk his privilege of self-incrimination, and also to prevent him from incurring undue burden and expense in appearing for a fruitless deposition.

II. **Factual History**

    a. History Of the Underlying Matter.

In this class action, the Plaintiffs were residents or owners of property on the Western portion of the island of St. Croix during a few months-period in 2021. (Sec. Amend. Compl. ¶ 15, filed at ECF No. 1327.)[1] [2] They allege that the defendants in the Underlying Case (collectively, and for ease of reference, "Limetree") purchased and operated a mothballed petroleum refining facility in St. Croix ("Facility").[3] (*See* Second Amend. Compl. ¶¶ 64-69.) Limetree then "recklessly ignored safe environmental management" of the Facility and obtained "unprecedented exceptions" to regulatory processes. (Sec. Amend. Compl. ¶ 103.) After several years of refurbishment of the Facility, Limetree then restarted operations on February 1, 2021. (*See* Sec. Amend. Compl. ¶ 114.) Over the next four months, the Facility allegedly experienced several

---

[1] All references to the facts of the Underlying Case and to the Plaintiffs' Complaint are made only for the purpose of providing context to this Court, and are not intended to be construed as admissions or statements by Weldzius.
[2] All electronic filing number citations are to the Underlying Case: 1:21-cv-00253-WAL-EAH.
[3] The defendants in the Underlying Case are referred to collectively herein only for convenience. Any distinction between the Underlying Case defendants, except as made explicitly herein, is immaterial to the resolution of Weldzius's Motion.

2

emissions-related incidents, leading to a shutdown of the Facility, an EPA investigation, the bankruptcy of several Limetree Defendants, and the Plaintiffs' alleged damages.

Shortly after the fourth emission-related incident, on May 14, 2021, the U.S. Environmental Protection Agency, Region 2, issued an Emergency Order to Limetree pursuant to Section 303 of the Clean Air Act, 42 U.S.C. § 7603. (Sec. Amend. Compl. ¶ 167; *see also* ECF 1298-1, at 4.) That order directed Limetree to cease operations at the Facility. (*Id.*) Plaintiffs filed their original Complaint in this matter on June 9, 2021. (ECF No. 1.) Only two days later, the Facility received an email from Gretchen Shappert, U.S. Attorney for the Virgin Islands, stating that "one or more of the recent events at Limetree Bay Refinery may constitute a criminal violation of the federal Clean Air Act." (ECF No. 1298-7.) The email went on to request any "owners/operators" of the Facility who have "an interest in cooperating with the government" to contact the U.S. Attorney by phone. (*Id.*)

Following the U.S. Attorney's email suggesting that Limetree defendants' conduct constituted criminal violations, the EPA issued another Notice of Violation on June 16, 2021, alleging other violations under Title 40 of the Code of Federal Regulations, Protection of the Environment, as well as violations of 12 V.I.R.&R § 206-92. (ECF No. 1298-1, at 5; ECF No. 1298-8.) The government then filed a civil complaint against Limetree in the District Court of the U.S. Virgin Islands in connection with the conduct described above. (*Id.*; see also D.V.I. 1:21-cv-264.) The potential criminal violations arising from the conduct described in the Underlying Complaint have a five-year statute of limitations. 18 U.S.C. § 3282(a); *see e.g.*, *U.S. v. W.R. Grace*, 429 F.Supp.2d 1207, 1239, n. 31 (D. Mont. 2006).

3

b. The History of the Weldzius Subpoena.

Mr. Weldzius, according to the Second Amended Complaint, was the Refinery (Facility) General Manager prior to April 19, 2021. (Sec. Amend. Compl. ¶ 130.) On February 20, 2025, Plaintiffs' counsel caused to be issued a Subpoena to Testify for Mr. Weldzius, setting his deposition for April 11, 2025, in Hendersonville, Tennessee. (**Exhibit 4**.) After conferring amongst Mr. Wedlzius's counsel and the parties, the deposition was reset for August 26, 2025. On June 30, 2025, Plaintiffs served a (First) Notice of Deposition for Mr. Weldzius. (ECF No. 1287.) It has since been continued by agreement of the Parties and Mr. Weldzius to October 8, 2025. Further, it was agreed to take place—if not quashed—in New Orleans, Louisiana, in an effort to mitigate Mr. Weldzius's attorney's fees and expenses and reduce the burden of his compliance. However, no subsequent subpoena has been issued. Mr. Weldzius's testimony, in addition to being sought by Plaintiffs, may also bear upon Limetree's defense in the Underlying Case. (ECF No. 1298-1, at 3-4.)

However, after service of the Notice on July 14, 2025, the attorney representing Mr. Weldzius in connection with a "federal criminal investigation into the emissions at issue in the Class Action" advised Plaintiffs' counsel that "in view of the federal criminal investigation Mr. Weldzius will respectfully invoke his rights under the Fifth Amendment of the U.S. Constitution and refuse to testify in your related civil matter." (**Exhibit 3**.)[4] Mr. Weldzius presently intends to assert his Fifth Amendment privilege.

The Department of Justice requested to interview Mr. Weldzius, or for him to testify, in connection with a federal criminal investigation into the emissions-related incidents at the Facility. It is also possible that Mr. Weldzius may face criminal prosecution in connection with the

---

[4] See also Limetree's Memorandum in Support of Emergency Joint Motion to Stay (ECF No. 1298-1) discussing the circumstances of the letter. The referenced letter is also filed at ECF No. 1298-5.

Facility's operations.[5] Indeed, the EPA's orders and notices made in connection with the Facility contain factual predicates that could support several criminal violations, including National Emission Standard for Hazardous Air Pollutants (NESHAP), 42 U.S.C. § 7413(c)(1), False Statements in CAA Documents, 42 U.S.C. § 7413(c)(2)(A), Tampering with Monitor Device or Method, 42 U.S.C. § 7413(c)(2)(C), Knowing/Negligent Endangerment, 42 U.S.C. § 7413(c)(4)-(5), and the Operating Permits Provisions, 42 U.S.C. § 7413(c)(1).[6] Mr. Weldzius's testimony in the Underlying Matter, therefore, may be used against him in a subsequent criminal proceeding.

After consultation regarding these issues between undersigned counsel and Plaintiffs' counsel Kerry Miller, Plaintiffs served on undersigned counsel a Second Notice of Deposition of Mr. Weldzius on September 17, 2025. (**Exhibit 2**.) The Court should quash the Subpoena.

### III. Law and Argument

#### a. Legal Standard, Jurisdiction, and Venue

This Court, as the "court for the district where compliance is required," has the authority to quash or modify the subpoena to Mr. Weldzius, even though the Underlying Matter arises out of the District for the Virgin Islands. Fed. R. Civ. P. 45(d)(3)(A).[7] Mr. Weldzius further submits himself to the jurisdiction of this Court because he is a resident of the State of Tennessee and resides within the boundaries of the Middle District.

---

[5] This Motion only recites the potential criminal violations to demonstrate that they are possible, not to admit any knowledge as to the factual predicates. *U.S. v. Berry*, 807 F.Supp. 439, 441 (W.D. Tenn. 1992) ("The law does not require [a defendant/movant] to prove guilt to avoid admitting it." *Id.* (internal quotations omitted)).

[6] The EPA provides an internet-posted bulletin, helpfully titled "Criminal Provisions of the Clean Air Act." https://www.epa.gov/enforcement/criminal-provisions-clean-air-act (last accessed September 15, 2025).

[7] Although Weldzius denies that it is necessary, the Rules provide this Court with the authority to transfer this Motion and enforcement of the Subpoena to D.V.I. Fed. R. Civ. P. 45(f). However, Weldzius does not consent to such transfer and avers that exceptional circumstances do not exist to permit the transfer.

As noted above, although the place where compliance is required is in the Middle District of Tennessee, Mr. Weldzius agreed that should he be required to sit for his deposition, it would occur in New Orleans, Louisiana, in an effort to mitigate some small portion of the expenses and burden imposed on him.[8]  The distinct terminology of applicable provisions of the Rules provide that a motion for protective order shall be filed "in the court for the district where the deposition will be taken." Fed. R. Civ. P. 26(c)(1).  The motion to quash, however, is properly filed in this Court.

    b.  <u>The Fifth Amendment Privilege Protects Weldzius From Giving Testimony</u>.

"No person * * * shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend V.  "The privilege has ancient roots" and its protections have always been "broadly construed [ ] to assure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action." *Maness v. Meyers*, 419 U.S. 449, 461 (1975) (internal citations omitted).  Although the text appears limited to that of testimony in a criminal matter, the application of the privilege is broader than the black letter suggests. *Moody v. Michigan Gaming Control Bd.*, 790 F.3d 669 (6th Cir. 2015).  Indeed, the "fulcrum of the Fifth Amendment privilege is the potential for self-incrimination, not the nature of the instant proceeding." *Fieger v. U.S. Att'y Gen.*, 542 F.3d 1111, 1120 (6th Cir. 2008).  The privilege applies in civil cases, such as this. *Moody v. Michigan Gaming Control Bd.*, 790 F.3d 669, 73 (6th Cir. 2015).  And it can be invoked by any witness who "reasonably believes" the information disclosed "could be used in criminal prosecution or could lead to other evidence which might be so used." *Tyson v. Equity Title & Escrow Co. of Memphis, LLC*, 282 F.Supp.2d 820, 823 (W.D. Tenn. 2003) (citing *Kastigar v. U.S.*, 406 U.S. 441, 444-45 (1972)).  Even the mere production of documents

---

[8] His criminal defense counsel is located in New Orleans, Louisiana.

can have testimonial implications protected by the privilege. *Maness v. Meyers*, 419 U.S. 449 (1975); *see also*, *U.S. v. Berry*, 807 F.Supp. 439, 441-42 (W.D. Tenn. 1992).

Although Plaintiffs may contend that there is no evidence—but for Mr. Weldzius's word—that he is subject to criminal investigation, there is no requirement for any such documentary proof. Whether such a "danger of incrimination exists" is for the trial judge to determine based upon an examination of the "implications of the questions in the setting in which they are asked." *U.S. v. Berry*, 807 F.Supp. 439, 441 (W.D. Tenn. 1992) (quoting *Hoffman v. U.S.*, 341 U.S. 479, 486 (1951)). What is not required, however, is that the deponent "confess the crime he has sought to conceal by asserting the privilege." *Id.* (quoting *U.S. v. Neff*, 615 F.2d 1235 (9th Cir. 1980)). Mr. Weldzius, in connection with Plaintiff's Second Amended Complaint, has sufficiently demonstrated that he is subject to potential criminal proceedings.

c. <u>The Subpoena Must Be Quashed</u>.

It is "required" that the Subpoena to Mr. Weldzius be quashed under the Rules because it "requires disclosure of privileged or other protected matter," and "subjects [Weldzius] to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). The Fifth Amendment to the U.S. Constitution is a "privilege" that "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer questions put to him in any other proceeding . . . where the answers might incriminate him in future criminal proceedings." *In re Morganroth*, 718 F.2d 161, 164-65 (6th Cir. 1983). This Court may quash a subpoena that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). Courts have long held that the assertion of the Fifth Amendment privilege will support a trial court's quashing of a subpoena. *See e.g.*, *Maness v. Meyers*, 419 U.S. 449 (1975) (applying the privilege to a subpoena for production of

7

prurient material); *U.S. v. Berry*, 807 F.Supp. 439 (W.D. Tenn. 1992) (applying the privilege to a summons for production of tax records). The Court should quash the subpoena to Mr. Weldzius to prevent him from having to disclose privileged matters and to prevent him from being subjected to an undue burden.

In order for the Court to quash a subpoena, the motion must be timely and the movant must demonstrate that the subpoena meets at least one of four elements. Additionally, the subpoena is "subject to the same discovery limitations as those set out in Rule 26" such as relevancy. *Fusion Elite All Stars v. Varsity Brands, LLC*, 340 F.R.D. 255, 261 (W.D. Tenn. 2022) (internal quotations omitted). The party seeking the discovery has the burden of establishing relevance. *Id.* Here, the subpoena is timely as it is filed before the time for the agreed-upon compliance, and it meets two elements: the Subpoena requires that Mr. Weldzius disclose information protected by his Fifth Amendment privileges, and it also subjects him to undue burden.

"One of the most important protections of persons subject to subpoena is that of privilege." Quashing or Modifying a Subpoena, 9A Fed. Prac. & Proc. Civ. (Wright & Miller) § 2463.1 (3d ed.). As Mr. Weldzius has consistently maintained, he fully intends on asserting his Fifth Amendment privilege against self-incrimination. He re-asserts his intent now. Here, nearly any question regarding the Facility and its operations—including his role therewith—may lead to self-incrimination or otherwise furnish a link in the chain of culpability. That Mr. Weldzius may likely assert the privilege to each and every question regarding his employment, is an appropriate basis for providing a blanket protection and quashing the subpoena. *Davis v. Straub*, 430 F.3d 281, 288 (6th Cir. 2005). Plaintiffs are likely to argue that Mr. Weldzius must submit to the deposition and assert the privilege on a question-by-question basis. But they would be wrong.

8

The principle of blanket protection in certain circumstances for nonparties is well supported by the law. It is well-expressed by the Ninth Circuit Court of Appeals stating, "Where the district court finds that the witness could invoke his Fifth Amendment privilege as to all questions, it may recognize a witness's blanket privilege against self-incrimination . . . ." *U.S. v. Klinger*, 128 F.3d 705, 709 (9th Cir. 1997); *U.S. v. Flores-Blanco*, 623 F.3d 912, 918 (9th Cir. 2010) (construing *Hoffman v. U.S.*, 341 U.S. 479 (1951) allow for blanket assertions of privilege based on trial court's knowledge and expected testimony); *but see*, *In re Morganroth*, 718 F.2d 161 (6th Cir. 1983) (construing *Hoffman v. U.S.*, to require individualized questions). The Sixth Circuit Court of Appeals has held similarly.

Although the application of *Hoffman* in the Sixth Circuit has been inconsistent, the Sixth Circuit Court of Appeals has conclusively held that the U.S. Supreme Court precedent in *Hoffman* "announced no rule proscribing the blanket assertion of the privilege against self-incrimination." *Davis v. Straub*, 430 F.3d 281, 288 (6th Cir. 2005). What is more, "the Court [in *Hoffman*] *upheld* the defendant's invocation of the privilege as to very preliminary questions." *Id*. (emphasis in original). There is a consistent exception to the general—if erroneously asserted—requirement of individualized questioning of the deponent prior to allowing him to assert the privilege. *U.S. v. Highgate*, 521 F.3d 590 (6th Cir. 2008). That is when, "it is clear that the witness intends to invoke the privilege with respect to any question asked, a particularized inquiry by the court would be futile." *Id*., at 594 (quoting *U.S. v. Medina*, 992 F.2d 573, 587 (6th Cir. 1993)). This exception is consistent with the Ninth Circuit Court of Appeals' holding in *Flores-Blanco*: that if the Court is satisfied that the witness's "silence is justified," then no particularized inquiry need be had. *Id*.

Because the Subpoena requires Mr. Weldzius's sworn testimony on matters that are squarely in the sights of the U.S. Government's criminal inquiry, permitting Mr. Weldzius to assert

9

the blanket privilege without submitting to his deposition is appropriate under Rule 45 and consistent with the U.S. Supreme Court's opinion in *Hoffman*, and this Court should grant him that protection. *See Davis*, at 288-89.

Additionally, not only does the Subpoena unquestionably and impermissibly jeopardize his assertion of privilege, thus satisfying Rule 45(d)(3)(A)(iii), requiring Mr. Weldzius to appear for his deposition to only assert the privilege on a question-by-question basis is unduly burdensome. Mr. Weldzius is not a party to the Underlying Matter and he has repeatedly made his intent to assert privilege known to the Plaintiffs. The only reason for his deposition is to either obtain information that is subject to the privilege, or to require him to assert the privilege to dozens or hundreds of questions. This is not appropriate.

Although Plaintiffs will certainly claim that Mr. Weldzius can still assert his Fifth Amendment privilege even if he sits for his deposition, by asserting it response to each individual question posed by Plaintiffs, the scope of the criminal inquiry is so broad and even the most innocuous-appearing questions may belie criminal responsibility. Requiring Mr. Weldzius to appear for his deposition when he will assert the privilege to almost every conceivable substantive question would create an undue burden and hardship on Mr. Weldzius. But even in asserting the privilege, he may still either inadvertently answer some questions or be compelled to answer other questions that may ultimately serve to vitiate his assertion of privilege. So even then, Mr. Weldzius meets the second of the two elements, and this Court should quash the Subpoena.

What is more, Mr. Weldzius's status as a non-party weighs in favor of squashing the subpoena. *Allen v. Howmedica Leibinger, GmhH*, 190 F.R.D. 518, 521 (W.D. Tenn. 1999) (considering non-party status as a "factor when weighing the burdens" of discovery) (citing *Katz v. Batavia Marine*, 984 F.2d 422, 424 (Fed. Cir. 1993); *see also Dart Indus. Co. v. Westwood Chem*

*Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (holding non-parties deserve greater protection against burdensome discovery). Even the very word "non-party serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery." *Id.* (quoting Getman, R., "Federal 'Third-Party' Discovery in the Small Antitrust Case," 45 Brooklyn L.Rev. 311 (1979)).

Simply put, Mr. Weldzius has demonstrated that the Plaintiff's Subpoena requiring his appearance at a deposition both impermissibly requires disclosure of privileged information and subjects him to undue burden. This Court, therefore, should enter an order quashing the Subpoena.

## IV. Conclusion

Movant/Plaintiff Robert Weldzius requests that this Court enter an order quashing the Subpoena requiring him to appear and give testimony in the Underlying Case. Such an order will prevent him from being required to disclose privilege matters, protect his Fifth Amendment privilege, protect him from undue burden, and serve substantial justice. Mr. Weldzius further prays for all such other and further relief as may appear proper from the premises.

    Respectfully submitted,

    **ADAMS & REESE LLP**

    *s/ John D. Woods III*
    John D. Woods III (TN Bar No. 35791)
    6075 Poplar Ave., Ste. 700
    Memphis, Tennessee 38119
    Tel.: (901) 524-5284
    Fax: (901) 524-5378
    John.Woods@arlaw.com

11

Case 3:25-mc-00017   Document 2   Filed 09/18/25   Page 11 of 12 PageID #: 33

## CERTIFICATE OF SERVICE

   The undersigned hereby certifies that a true and correct copy of the foregoing document was filed via the Court's ECF system and notice was given to all counsel of record pursuant to the Federal Rules of Civil Procedure by Electronic Filing, on this the 18th day of September, 2025.

               */s/ John D. Woods III*
               John D. Woods III